JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATKINS INVESTMENT PARTNERSHIP, et al., <br> Plaintiffs, <br><br> v. <br><br> DUFF & PHELPS, LLC, <br> Defendant. | CV 21-1145 DSF (MRWx) <br><br> Order GRANTING Motion to Dismiss (Dkt. 35) |

Defendant Duff & Phelps, LLC (Duff) moves to dismiss Plaintiffs' complaint for lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim. Dkt. 35 (Mot.). Plaintiffs oppose. Dkt. 57 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The Motion is GRANTED.

## I. BACKGROUND

Plaintiffs are investors and limited partners purportedly defrauded by Direct Lending Investments, LLC (DLI) and Brendan Ross – DLI's founder, owner, and CEO. See Dkt. 1 (Compl.) ¶¶ 1-2, 18-157. DLI was the investment advisor and general partner of DLI Capital, Inc., a master fund for DLI's investments (Master Fund). Id. ¶¶ 158-59. According to Plaintiffs, they were investors and limited partners in DLI's "feeder funds" – Direct Lending Income Fund, L.P. and Direct Lending Income Feeder Fund, Ltd. – which made

investments through the Master Fund (collectively with the Master Fund, the Funds). Id. The Funds "principally invested in short-term loans, lines of credit, purchased receivables, and other debt obligations." Id. ¶ 160.

Duff is a Delaware limited liability company "that provides valuation services worldwide." Id. ¶¶ 14, 172. Duff's headquarters are in New York, New York and it is registered "and routinely does business in California." Id. ¶¶ 12, 14. On October 26, 2016, DLI retained Duff to provide valuation services. Id. ¶ 175. From approximately October 2016 through January 2019, Duff provided quarterly and then monthly valuation reports, which Plaintiffs contend were used to "attract additional funds from investors" by providing "comfort to prospective investors that the Funds were legitimate." Id. ¶¶ 3, 5, 170-72, 175, 178, 180, 182-83, 204.

In early 2019, DLI informed Plaintiffs that VoIP Guardian Partners I, LLC and QuarterSpot, Inc. – two of DLI's loans – were unable to make payments or the valuations of the loans were "materially overstated." Id. ¶¶ 214-15. In March 2019, the SEC brought suit against DLI for engaging "in a multi-year fraud—perpetuated through Ross—that resulted in approximately $11 million in over-charges of management and performance fees to fund investors, and the inflation of DLI's private funds' returns." Id. ¶¶ 216-17. In April 2019, a receiver (Receiver) was appointed to oversee DLI and the Funds. Id. ¶ 218. The Receiver reported that DLI investors would suffer monetary losses because "upward of 70% of the capital invested has been lost" and it became "apparent" that Duff's "valuation reports were based on improper and inadequate valuation techniques, were misleading, and materially overstated the value of the funds' assets." Id. ¶ 8; see also id. ¶¶ 168, 208, 232.

Plaintiffs allege that DLI and Ross "knowingly engaged in a scheme to defraud Plaintiffs" by (1) "[m]aking representations about DLI's assets, net income, and investment returns and valuations"; (2) "[c]oncealing DLI and investments platforms' dire financial condition"; and (3) "[o]verstating valuations to calculate and extract

2

inflated management and performance fees from investors." Id. ¶ 232. According to Plaintiffs, "[a]s DLI's independent valuation firm, Duff [] was responsible for conducting and applying reasonable valuation procedures to substantiate DLI's conclusions regarding the value of DLI's assets, including utilization methods and techniques that were appropriate under the circumstances." Id. ¶ 233. Plaintiffs further contend Duff (1) aided and abetted DLI's fraud by "issuing valuation reports that corroborated DLI's false internal valuations"; (2) aided and abetted breaches of DLI's fiduciary duties to Plaintiffs by DLI and Ross; and (3) made negligent misrepresentations by making "materially false and misleading representations, and omitted material information . . . concerning the value of the Funds' assets and the credibility of the valuations assigned by DLI" and failing to "conduct proper independent valuations of the Funds." Id. ¶¶ 226, 235, 241-47. Plaintiffs further allege Duff benefitted from the fraudulent scheme perpetrated by DLI and Ross by receiving professional fees. Id. ¶ 237.

## II. LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction [under Rule 12(b)(2)], the plaintiff bears the burden of demonstrating that the court has jurisdiction." In re Western States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013). If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss," and the court resolves all contested facts in favor of the plaintiff. Id. (citation and internal quotation marks omitted). A plaintiff may not, however, establish jurisdiction by alleging bare jurisdictionally-triggering facts without providing some evidence of their existence. Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). Rather, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Id. (citation and internal quotation marks omitted). Moreover, courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]" Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir.

2011) (internal quotation marks omitted) (quoting Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977)).

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis." Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994). "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." Id. "Second, the exercise of jurisdiction must comport with federal due process." Id. at 1404-05 (citation omitted). Because California's long-arm statute reaches as far as due process allows, see C.C.P. § 410.10, the Court need consider only whether the exercise of jurisdiction comports with due process.

Due process requires that nonresident defendants have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (simplified). Personal jurisdiction may be either general or specific. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984). A defendant is present "generally" in the forum when its activities in the state are "substantial" or "continuous and systematic." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). "Specific jurisdiction" exists when the claim for relief arises directly from defendant's contacts with the forum state. See AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

### III. DISCUSSION

Plaintiffs do not contend the Court has general jurisdiction over Duff, therefore the Court applies the Ninth Circuit's three-prong test to evaluate whether it may exercise specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

4

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted). The plaintiff bears the burden of satisfying the first two prongs and then the burden shifts to the defendant to make a "compelling case" that the third prong has not been met. Schwarzenegger, 374 F.3d at 802. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting Walden v. Fiore, 571 U.S. 277, 277 (2014)). In other words, the inquiry is "defendant-focused" and the relationship "must arise out of contacts that the 'defendant [*itself*] creates with the forum State . . . [n]ot the defendant's contacts with persons who reside there." Id. "It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" Id. (quoting Walden, 571 U.S. at 286). "There must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) (simplified).

### A.     Purposeful Availment

To determine if there is purposeful availment, courts consider whether the defendant's conduct and connection with the forum state create a reasonable anticipation of being haled into court there. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Because Plaintiffs' claims sound in tort, a purposeful direction analysis

is appropriate. Axiom, 874 F.3d at 1069. Purposeful direction is analyzed under a three-part "effects" test; the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id. (citations omitted).

Plaintiffs allege Duff committed intentional acts expressly aimed at California with respect to the valuations performed for DLI, which harmed California investors. See Opp'n at 4-9. Duff purportedly did so by "enter[ing] into an engagement letter with a California company, DLI, . . . allow[ing] DLI to use the [Duff] name to falsely lend credibility to the scheme . . . and provid[ing] numerous valuations of 22 companies, of which no less than nine were California companies," including "DLI's most significant holding, VoIP." Id. at 5. Plaintiffs also allege Duff "allowed DLI to use its name with investors, and to refer to [Duff] in response to investor inquiries, as permitted in the engagement letter," Duff "knew that DLI used its name in periodic investor letters, touting [Duff] as an 'independent' valuation firm," and Duff "continuously communicated with DLI via email and telephone." Id. at 1, 6. In addition, Plaintiffs contend Duff communicated with DLI "on countless occasions" while performing its valuation services, "invoiced DLI in California," "collaborated with DLI's California-based auditors," and "sent valuations and documents to DLI in California." Id.

Even assuming Duff has committed an "intentional act," Plaintiffs have not satisfied their burden to allege jurisdictional facts that establish Duff's "intentional act[s]" were "expressly aimed" at California. Nor can Plaintiffs establish Duff caused harm that it knew would be suffered in California.

### 1. Contract with DLI

As to Plaintiffs' allegations that Duff contracted with DLI, Plaintiffs simply allege that Duff contracted with a California entity, not that the contract was negotiated and signed in California. Opp'n at 8-9 (DLI and Duff "resumed negotiations . . . when [Duff] sent DLI an

6

engagement letter with DLI's comments and additions."); id. at 5 (Duff "entered into an engagement with a California company, DLI."). Duff, however, provides evidence that it negotiated and signed the contract in New York. Dkt. 35-3 (Schrader Decl.) ¶ 7. Ordinarily, on a motion to dismiss for lack of jurisdiction, courts must resolve factual disputes in favor of the non-moving party. See In re Western States Wholesale Nat. Gas Antitrust Litig., 715 F.3d at 741. However, as stated above, courts may not assume the truth of an allegation contradicted by a declaration. See Mavrix Photo, Inc., 647 F.3d at 1223. Here, Duff submitted the declaration of John Schrader, Managing Director of Duff. Schrader declared: "The contract was negotiated and signed by me in New York." Schrader Decl. ¶ 7. Therefore, the Court does not consider Plaintiffs' allegation that the contract between Duff and DLI was entered into in California to determine Duff's motion to dismiss for lack of personal jurisdiction.[1]

The "mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). Moreover, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." Axiom, 874 F.3d at 1068. Here, Plaintiffs rely heavily on the contract between DLI, a California company, and Duff. But reliance on a California third party's contract to establish personal jurisdiction over Duff, a non-California entity, is insufficient to establish Duff expressly aimed its conduct at the forum state. See Willis v. Princess Cruise Lines, No. 2:19-cv-06278-SVW-FFM, 2020 WL 5353984, at *6 (C.D. Cal. May 29, 2020) (citing Williams v. Yamaha Motor Co. Ltd., 851 F.3d 1015, 1023-25 (9th Cir. 2017) (holding a co-defendant tour operator company's contacts were not expressly aimed at the forum state because its contacts were directed only at a California company, not the state itself); see also Blaha v. Rightscorp, Inc., et al., No. CV 14-9032 DSF (JCGx) at 3-4 (C.D. Cal. May 8, 2015) (holding the Court lacked personal jurisdiction

---

[1] Plaintiffs did not submit a declaration in support of their Opposition addressing or contradicting the substance of the Schrader Declaration.

7

over the defendant because his contacts had "little to do with California other than that his client happen[ed] to be there.").

Moreover, to the extent the Court considers the contract between DLI and Duff for purposes of personal jurisdiction, the parties do not dispute that the contract contains a New York forum selection and choice-of-law clause.  See Mot. at 1 ("The contract itself stated that disputes arising under it could be litigated only in New York state courts, which were to apply New York law."); see also Opp'n at 12-13 (acknowledging that this Court previously transferred a similar case brought by the Receiver against Duff to New York because of the contract's forum selection clause).[2]  Though not dispositive, the forum selection clause contained in DLI's contract with Duff clearly suggests that rather than "reasonably anticipat[ing] being haled into court" in California, the parties expressly agreed that Duff would not be haled into a court in California – at least not by DLI.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citation omitted).

### 2. VoIP Presence in California

As to VoIP's presence in California, Plaintiffs fail to explain how DLI's relationship with VoIP confers jurisdiction over Duff, a nonresident defendant.  Even assuming there is a relationship between Duff and VoIP, for the reasons set forth above, VoIP's presence in California is insufficient to satisfy the second prong of the purposeful direction analysis.  See Axiom, 874 F.3d at 1068; see also Blaha, No. CV 19-9032 DSF (JCGx) at 3-4.[3]  In other words, Duff's valuation work with VoIP is not sufficient to establish personal jurisdiction because "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."  Walden, 571 U.S. at 286.

---

[2] See Bradley D. Sharp v. Duff & Phelps, LLC, No. 20-8069 DSF (MRWx) (C.D. Cal. Jan. 28, 2021), Dkt. 25.

[3] Plaintiffs allege that "[a]ccording to VoIP's bankruptcy filings, its principal place of business is in Santa Monica, California."  Opp'n at 5 n.3.

### 3. Valuation Reports

Next, Plaintiffs contend Duff's acts were expressly aimed at California because Duff sent valuation reports to DLI in California. See Opp'n at 4-6. Duff does not dispute that the reports were sent to and received in California. Plaintiffs rely heavily on Ciuffitelli v. Deloitte & Touche LLP, No. 3:16-cv-00580-AC, 2018 WL 4568737 (D. Or. Aug. 1, 2018). While Ciuffitelli is undoubtedly factually similar to the case at hand, there are significant distinctions that make Ciuffitelli inapposite. Most notably is the importance the court in Ciuffitelli placed on the fact that Duff permitted the company – which purportedly defrauded its investors – to use Duff's name and the nature of its services in the company's offering documentation, SEC filings, and investor calls. Id. at *19 ("Contrary to Duff's suggestion, it reached out beyond its home state into Oregon by agreeing to permit Aequitas to use its name in the ACOF offering documents and other marketing materials."). In other words, the court in Ciuffitelli placed less emphasis on the fact that reports were sent from Duff to a company in Oregon. It considered more compelling the fact that Duff permitted the company to use its name on offering documentation, SEC filings, and investor calls, thereby "expressly aim[ing] its alleged material aid and participation in the sale of securities at Oregon." Id. at *18. In addition, Duff was registered in Oregon as a foreign limited liability company with an agent for receiving service of process. Duff had acquired a legal management consulting company domesticated in Oregon and the company's thirteen former employees are then employed by Duff. Two new employees hired by Duff resided in Oregon. Id. at *16.

Duff contends the contract between DLI and Duff permitted DLI to disclose Duff's name and participation in the valuation reports *only if* an investor inquired and an investor could view the valuation reports *only if* first signing a release of Duff. Mot. at 5; see also dkt. 60 (Reply) at 3 (emphasis added). Duff argues that no Plaintiff ever inquired about Duff's identity or requested the valuation reports, and if DLI did use Duff's name it did so impermissibly. Mot. at 5; Reply at 3. Plaintiffs do not dispute that the contract outlined the circumstances in

9

which DLI could identify Duff with respect to the valuation services being performed. See, e.g., Opp'n at 6 (Duff "allowed DLI to use its name with investors, and to refer to [Duff] in response to investor inquires, *as permitted in the engagement letter*.") (emphasis added). In addition, the contract expressly states that Duff's valuation reports "may also be provided to the [DLI's] advisors and investors . . . provided that any such Other Third Party Recipient execute and deliver a third-party release letter." Dkt. 35-1 at 9-10.[4] Plaintiffs do not contend that any Plaintiff requested the identity of Duff or that any Plaintiff signed a release form.

Plaintiffs also contend that Duff knew DLI represented to potential investors and Plaintiffs that it had retained an independent valuation expert. See Opp'n at 14, 21. Therefore, according to Plaintiffs, it was foreseeable that DLI would have investors based in California, and that Defendant would be held accountable in California for any harm resulting from its wrongdoing. See id. at 6-7. However, Duff's mere "knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum" on its own is insufficient to confer personal jurisdiction. Axiom, 874 F.3d at 1069-70 (simplified). Moreover, the mere fact that Duff was contractually obligated to send valuation reports to California is irrelevant. The Ninth Circuit has held that "the fact that a contract envisions one party discharging [its] obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." Picot v. Weston, 780 F.3d 1206, 1213 (9th Cir. 2015). As Duff contends – and Plaintiffs do not dispute – it did not perform any work for DLI in California and no employees visited California in connection with Duff's work for DLI. Mot. at 10; Schrader Decl. ¶¶ 10-12. Although it is a

---

[4] The Court considers the contract because it is incorporated by reference in the Complaint. See United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

close call, the Court is not persuaded that Duff's conduct preparing the valuation reports was expressly aimed at California.

Plaintiffs also assert that Duff communicated with DLI in California in the course of Duff's valuation services, through phone calls, emails, invoices, and other communications. Opp'n at 6, 8. But phone calls and other communications to a forum resident are not necessarily sufficient acts to authorize the exercise of personal jurisdiction. The parties agree that no Duff employees located in California did any work for DLI. Dkt. 57-2 (Stipulation to Certain Facts in Lieu of Jurisdictional Discovery) ¶¶ 1, 6-7. In addition, as noted above, no Duff employees visited California in connection with Duff's work for DLI. Mot. at 1, 4, 10. The Court therefore finds Duff's communications with DLI in California are insufficient to support a finding that Duff's conduct was expressly aimed at California.

### 4. "Effect" in California

Finally, Plaintiffs allege Duff's actions have harmed or affected California. See Opp'n at 6-7. However, the "mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." Walden, 571 U.S. at 291. Here, all Plaintiffs have established is that 30 of the 144 named plaintiffs are California residents and they were harmed by DLI, a company that happens to be headquartered in California. Opp'n at 6-7. However, Plaintiffs' alleged injuries and any potential damages were "entirely personal to [them] and would follow [them] wherever [they] might choose to live or travel." Picot, 780 F.3d at 1215.[5] Therefore, Duff's actions cannot be said to have "had an effect" in California so as to establish personal jurisdiction.

---

[5] Because Plaintiffs have failed to satisfy the first prong of the Schwarzenegger test, the Court need go no further before concluding that Plaintiffs have failed to meet their burden of establishing personal jurisdiction over Duff. See Schwarzenegger, 374 F.3d at 802 (If the plaintiff fails to satisfy either of the first two prongs, "personal jurisdiction is not established in the forum state.").

11

### B. Reasonableness

"Although reasonableness is considered as a separate factor in determining the existence of limited personal jurisdiction, a defendant need only prove the unreasonableness of a court's exercise of personal jurisdiction if it is shown that the defendant's activities were purposefully directed at the forum state." Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1052 (9th Cir. 1997). Because Duff did not direct its activities at California, Plaintiffs have failed to make a prima facie showing that the Court should assert specific jurisdiction over Duff.

### C. Rule 12(b)(6) and *Forum Non Conveniens*

Because the Court has granted Duff's Motion on personal jurisdiction grounds, the Court need not address Duff's *forum non conveniens* and Rule 12(b)(6) arguments.

## IV. CONCLUSION

For the reasons set forth above, Duff's motion to dismiss for lack of personal jurisdiction is GRANTED without prejudice to filing in the appropriate forum.

IT IS SO ORDERED.

Date: December 29, 2021

Dale S. Fischer
United States District Judge